**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1164-23

LEROY H. GOULD,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF TRANSPORTATION,

    Defendant-Respondent.

_____

Argued March 31, 2025 – Decided April 22, 2025

Before Judges Sabatino, Gummer, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0236-20.

Michael C. Crowley argued the cause for appellant (Crowley & Crowley, attorneys; Michael C. Crowley, on the brief).

Eric M. Intriago, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Eric M. Intriago and Joseph D. Sams, Deputy Attorney General, on the brief).

PER CURIAM

This is a disability discrimination case brought under the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50. Plaintiff Leroy H. Gould[1] contends his now-former employer, defendant New Jersey Department of Transportation ("NJDOT"), violated his rights under the LAD by failing to engage adequately in good faith in an "interactive process" to provide him with reasonable accommodations of his disability of urinary incontinence. The NJDOT contends it acted in good faith by offering plaintiff several accommodations, some of which he rejected. The trial court granted summary judgment to the NJDOT and dismissed plaintiff's lawsuit.

We vacate summary judgment and remand this case to the trial court for a jury trial. For the reasons that follow, we conclude the trial court erroneously did not view the motion record in all respects in a light most favorable to plaintiff and overlooked several of plaintiff's requests for accommodation that his employer allegedly failed to address. In addition, the court resolved in the employer's favor genuine disputed issues of material fact that a fact-finder must

---

[1] We discuss plaintiff's medical condition out of necessity because it is central to the issues before the court. See R. 1:38-1A. We note the record is not sealed and that plaintiff's counsel has not objected to disclosure of the medical facts for purposes of this case.

A-1164-23

assess in light of the testimony and other evidence to be adduced on a plenary basis at trial.

I.

The motion record presents the following pertinent factual and procedural background. We summarize that background, mindful that the case has yet to be tried and that the parties dispute numerous facts and the reasonableness of their respective conduct.

<u>Gould's Employment with the NJDOT and His Medical Needs</u>

Gould began his employment with the NJDOT in May 2001. He retired twenty years later in June 2021.

The critical events at issue occurred between 2017 and 2019. By the end of that time period, Gould served as a Principal Planner and Transit Village Coordinator at the NJDOT, helping to coordinate rail and bus services.

Gould's commute to his workplace, the NJDOT's Main Office Building (known as the "MOB"), consisted of driving to Mount Laurel from his home in Vineland, then taking an employee van pool from Mount Laurel to Ewing, and ending with getting dropped off at the MOB. The MOB is located between defendant's Finance & Administration ("F&A") building and the Engineering & Operations ("E&O") building.

3

In 2012, Gould developed prostate cancer. He underwent radiation treatment and surgery, which resulted in frequent bouts of urinary incontinence. Generally, after Gould's commute to work, he would need to use the restroom immediately. Getting dropped off in front of the MOB building was generally sufficient to meet his needs, as the bathroom was a two-minute walk from the drop-off location. Gould's urinary incontinence also required him to wear and dispose of high-absorbency undergarments, to clean and dry his soiled clothing, and to wash urine from his body frequently to prevent rashes.

Between 2012 and 2017, Gould did not request any formal accommodations for his urinary incontinence condition. However, he was permitted to wear jeans to work after his cancer surgery because that fabric allows urine to dry quicker and prevents rashes from the urine. Gould also was granted a stand-up desk in 2016 for vascular issues in his legs.

The MOB Construction Work and Gould's Short-Term Accommodation Requests

During six weeks in the summer of 2017, the MOB parking lot underwent construction. The construction activity caused the van pool drop-off point to move to the E&O building. Gould reported that using the restroom in the E&O building was insufficient to meet his incontinence needs because that restroom was approximately 200 feet from the drop-off point, compared to the MOB

4

building's thirty feet. The temporary drop-off location increased Gould's walk to the MOB bathroom by approximately eight minutes. The F&A building had a restroom about the same distance from its entrance as the one in the E&O building.

On June 23, 2017, Gould spoke to the NJDOT's Human Resources Americans with Disabilities Act Coordinator Lori Moore-Stern about his difficulties with the temporary van pool drop-off point in light of his urinary incontinence needs. Gould requested to either work from home during the construction period or to be allowed to enter the MOB building at its side entrance, which was closer to a restroom.

On June 30, 2017, the NJDOT's Director of Human Resources ("HR"), Michele Shapiro, advised Gould that the NJDOT was unable to approve his request for an accommodation that would allow him to work from home during the construction nor to permit him to use the side entrance to the MOB. However, the NJDOT offered to provide him "additional time in the mornings and afternoons to get to and from the vanpool drop-off/pickup point" and that, alternatively, he could consider seeking "a leave of absence for the duration of the construction period as an accommodation."

Gould requested clarification. On July 5, 2017, Moore-Stern responded

by email explaining the E&O and F&A buildings had restrooms near the van pool drop-off point and that "there are no other available entrances to the [MOB] building that can be utilized during the construction period." Moore-Stern restated the available accommodations of "extra time in the morning and evening to navigate between the vanpool and your workstation" and "a leave of absence."

On July 7, 2017, Gould's urologist provided a handwritten note stating that Gould "requires access to a bathroom facility where he may change and dispose of soiled garments. [Gould] is being evaluated and treated for urinary incontinence."[2]

On July 18, 2017, Gould emailed Shamecca Bernardini of the Division of Civil Rights to follow up on his accommodation requests. Bernardini responded the same day, stating Gould could not "access through the [C]redit [U]nion [MOB side door] due to security issues and the difficulty of disarming the door in that area." Bernardini added that the NJDOT was "consider[ing] the possibility of a port-a-john" and that Moore-Stern would follow up with him regarding the port-a-john.

Alternatively, Bernadini wanted to "know [Gould's] thoughts on being

_____

[2] We note the NJDOT does not contest that medical diagnosis nor the urologist's opinion about Gould's bathroom needs.

dropped off at the side of the E&O building so that the distance between the bathroom and the door is" reduced, given that the E&O building's "bathroom has a functioning wash are[a] as well."[3]

That same day Shapiro also emailed Gould to reiterate the "extra time" and "leave of absence" options. Shapiro further suggested to Gould "if the restroom near your workstation or either of the currently available entrances do not adequately address your medical needs, the restroom near the cafeteria, which has additional comfort amenities, is also available for your use."[4]

On July 21, 2017, Moore-Stern emailed Gould, flatly stating that "the State of [New Jersey] does not provide telecommuting options for State employees, except in those cases there the employee is on-call or in emergency situations." Moore-Stern further stated that "the door by the Credit Union is an emergency exit only and no guard is stationed in that area, so for reasons of safety and security, this door cannot be used as an entrance."

---

[3] It is unclear from the record how much shorter the distance from the E&O side door is to the restroom than the E&O's main door. Also, it is unclear what the "wash area" consisted of.

[4] The record reflects that the restroom near the cafeteria apparently does not contain any handicap stalls. It is unclear from the record what the implied "comfort amenities" included, other than a shower located in the restroom.

Moore-Stern wrote to Gould that the NJDOT had "consulted with the Statewide ADA Coordinator and it has been determined that the accommodations extended to [him] (i.e. extra time to navigate to and from the van pool, or the alternative accommodation of a leave of absence during the construction period), are considered [by the ADA Coordinator to be] reasonable and appropriate."

Long-Term Accommodation Requests

Apart from Gould's aforementioned request for accommodation that related to the temporary MOB construction and change in van drop-off point, a separate and more lasting concern was Gould's need for an appropriate restroom that was readily accessible during the workday. According to Gould, the restroom needed to afford him both privacy and a suitable place to rinse and dry his soiled clothes and groin in the event of a urinary leak. Simply stated, Gould "wanted a bathroom with proper cleaning facilities and privacy."

The timing of Gould's long-term accommodation request appears related to the bathroom renovations already taking place throughout the NJDOT complex. At his deposition, Gould described that:

> [The NJDOT] renovated 32 bathrooms. . . . [E]very bathroom in every building [so] I asked that they make one, um, accessible for people that have issues that need privacy with a sink . . . [to] clean up with . . . [and] I

8

asked that they put a place where I could dispose of adult diapers. I asked for a place where you could dry your clothes.

Gould explained that because he had worked in construction for over twenty years before working at the NJDOT, he "knew how easily and inexpensively his requested changes could be made" in light of the ongoing bathroom renovations.

Specifically, Gould requested that the NJDOT modify the bathroom closest to his office to create an accessible handicap stall that included: (1) a stall door that goes to the floor; (2) a trash container inside the stall to dispose of his high-absorbency undergarments; (3) a sink inside the stall where he could wash his soiled clothing and his groin to prevent rashes; and (4) a hand dryer in the stall where he could dry his soiled clothes.

On July 24, 2017, Gould emailed his union representatives,[5] explaining his disability as well as outlining how the construction and lack of suitable restrooms in the workplace affected him. He described the accommodations he had requested and the NJDOT's responses and included attachments of his

---

[5] We recognize an employer is not responsible for an employee's communications with his labor union, but the email is relevant insofar as it sheds light on Gould's state of mind and his own alleged good faith concerning the interactive process with the NJDOT. The email also reflects in detail why Gould felt he needed the accommodations and what he hoped to achieve through the interactive process.

A-1164-23

accommodation request letters, meeting documents, and his medical note. In that email, Gould explained that:

> In my current situation, access to a restroom that meets my needs is not a convenience, but rather the difference between getting out into the world and becoming a contributing member of society or remaining hidden at home where I can be assured of reaching a restroom in time. I think I have a right to work in spite of my disabilities. The leaders of this facility should be able to find reasonable solutions that maintain my dignity without disrespecting me or my disabilities.

Gould asserted that the NJDOT had "provided no meaningful accommodations" and "[e]ach of my requests . . . were rejected yet their couple of [alternative accommodation] suggestions are actually not relevant to my needs." He explained that "I cannot wear an adult diaper at work because there are no bathroom facilities with any privacy features or enhancements that would allow me to clean up after changing the diaper."

In particular, Gould contended that the restroom closest to his workspace was insufficient to clean urine from his groin and body in the public sink. He asserted "[t]he use of this facility to clean up will require me to expose myself to co-workers as the facility is not designed to accommodate this need" and "[s]hould an incident [of incontinence] occur where I would need to wash up, I would need to leave the sanctum of the stall and expose myself at a sink or

shower facility."

Regarding Gould's need to change his high-absorbency undergarments, he explained:

> The changing also involves somebody smelling the mess as I walk out of a stall with a dirty diaper in my hand necessitating the need for a special bin for soiled diapers be located in the restroom stall. The sink to wash-up has to be in the same space as well as a counter that is low enough and long enough that I can lay down and do my diaper changes. A properly built handicap restroom would have floor to ceiling walls and doors and many other comfort amenities not found in the restroom[s] I have been directed to use here.

On December 6, 2017, Gould obtained another handwritten doctor's note, which stated that Gould "should have the restroom accommodations that he is entitled to" and that Gould "should have access to a more private restroom, with a sink."

The Final Response from the NJDOT's HR Director

Two months later, on February 2, 2018, the NJDOT's Director of Human Resources wrote to Gould, advising him that:

> The Department has concluded its review of your reasonable accommodation request . . . [and] the following accommodations would be granted:
>
> - A chair has been placed in the men's room on the second floor of the Main Office Building.

11

- Coat hooks in the men's room on the first and second floors of the Main Office Building, as well as the men's room near the cafeteria, have been tightened or replaced as needed.

- Waste receptacles will be placed in the handicapped stalls in each men's room throughout the complex.

Regarding your request for a well-equipped restroom with privacy, the men's restroom near the cafeteria is the only facility within the complex that is suitably equipped. To that end, this restroom has been cleaned, the broken tiles in the shower area have been repaired, and there is a teak mat that provides a non-slip surface in the shower.

You can utilize a locker in the men's room near the cafeteria, where you may store any personal-use items that you may need.

Gould was dissatisfied with the NJDOT's response to his requests. At his deposition, he noted that: (1) the cafeteria restroom was insufficient because he "can't get to it" in time to prevent urinary leakage as he "has to pass [another bathroom] to get to that one"; (2) the cafeteria bathroom lacked a handicapped stall; (3) the cafeteria restroom shower was not in a secure private space and there was not a proper area in that restroom for him to change his clothes; and (4) generally "[s]till there was no privacy."

Gould left the NJDOT's employment on June 1, 2021, at the age of seventy-one. He said his reason for leaving was because he "could not handle

the leaking anymore and . . . not being able to clean up afterwards."[6]

This Lawsuit

In February 2020, while Gould was still employed at the NJDOT, he filed a complaint in the Law Division against the NJDOT asserting, under the LAD, a disability discrimination claim, a failure to accommodate and engage in the interactive process claim, and a hostile work environment claim.[7] For these claims Gould sought compensatory damages, punitive damages, prospective injunctive relief,[8] and attorney's fees.

At the close of discovery, the NJDOT moved for summary judgment. At oral argument the NJDOT argued that it had "offered a reasonable accommodation beyond what was required by the law." Gould, meanwhile, argued that the NJDOT had failed to engage in good faith in the "interactive process" mandated by the LAD and disability law. Tynan v. Vicinage 13 of the Superior Court, 351 N.J. Super. 385, 400 (App. Div. 2002).

---

[6] We note plaintiff's complaint did not assert a claim of constructive discharge.

[7] Gould's appeal does not include arguments regarding the hostile work environment claim.

[8] At oral argument on appeal, plaintiff's counsel acknowledged that plaintiff's claim for prospective injunctive relief to provide him with workplace accommodations is moot as a consequence of his retirement.

The trial court issued an oral decision on November 3, 2023, granting the NJDOT's motion for summary judgment and dismissing Gould's complaint with prejudice.

The court noted the four-prong test regarding reasonable accommodations set forth in Tynan, 351 N.J. Super. at 400. The court found that prongs one (the employer knew about Gould's disability) and two (the employee requested accommodations) are not in dispute. Thus, as described by the court, its analysis of the failure-to-accommodate claim would center on prong three, "whether [the] NJDOT made a good faith effort to assist [Gould]," and prong four, whether Gould "could have been reasonably accommodated but for [the NJDOT's] lack of good faith."

The court's oral opinion discussed some, but not all, of the accommodations specifically requested by plaintiff and those counter-offered by the NJDOT. For example, the court noted that the purpose of the hooks in the restroom was to provide space for Gould to hang his bag or clothing and the chair placed in the restroom was supplied for Gould to sit while changing his clothing. The court also noted that Gould chose to take the van pool, and surmised that it was "possible the urgency when he gets off the van is because

A-1164-23

he was using the van as opposed to driving and making whatever stops he needed to make along the way."

After finding "no genuine issues of material fact," the court concluded that "no reasonable jury could find that there was a lack of good faith in exploring what options were available" by the NJDOT in the interactive process. The court perceived "there was dialogue" even if it was not "face to face, as [Gould] would've preferred."

The court found that the NJDOT had acted in good faith as to the accommodation request related to the temporary MOB parking lot construction, because the Credit Union side door entrance presented "legitimate security concerns" and remote work was not available due to a "business rationale." The court also observed that the NJDOT had offered Gould "additional time for him to get to his workplace" and "a leave of absence." In that latter regard, the court stated that a "leave of absence can under some circumstances be a reasonable accommodation."

With respect to Gould's bathroom accommodation requests, the court concluded that "no reasonable jury could find there was a lack of good faith interaction." The court ruled that the NJDOT's denial could not "in any way, shape or form constitute a lack of good faith for not accommodating him with

15

respect to having [a] floor-to-ceiling door for the bathroom [stall]." Additionally, the court found that, although Gould had privacy concerns, the NJDOT had provided "alternate accommodations with respect to providing [Gould] with a locker room where he could change his clothes, waste reciprocals for soiled undergarments to be disposed of," and a chair and "hooks for hanging things on."

The court added that, as a legal matter, "disagreements as to the alternative accommodations" do not constitute a "lack of reasonableness or a lack of good faith." The court emphasized that the NJDOT is not required by law to provide "the ideal situation" for Gould. Accordingly, it reasoned that no "jury could conclude that the NJDOT was remiss in its obligations to engage in an interactive dialogue and provide a reasonable accommodation."

Plaintiff appeals the trial court's decision. Fundamentally, he argues the court failed to view the motion record, as the law requires, in a light most favorable to him. He maintains the court overlooked many aspects of his requests for accommodation that the NJDOT did not address, and that the NJDOT's proposed counter-measures were not responsive to his disability needs. He urges that we vacate summary judgment to enable a jury to resolve disputed material issues of fact, and to evaluate the reasonableness of the parties'

16

respective proposals and counter-proposals.

## II.

### The LAD's Purpose and Background

The LAD prohibits "any unlawful discrimination against any person because such person is or has been at any time handicapped or any unlawful employment practice against such person, unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1. The LAD defines "disability" in relevant part as one suffering from a "physical or sensory disability, infirmity . . . which is caused by . . . illness . . . which prevents the typical exercise of any bodily or mental functions." N.J.S.A. 10:5-5(q).

"The overriding purpose of the LAD's promise to eradicate obstacles in the workplace for persons with disabilities is to make it possible for people to work." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 530 (2021). The LAD is "remedial social legislation . . . [that] should be given liberal construction in order that its beneficent purposes may be accomplished." Royster v. N.J. State Police, 227 N.J. 482, 500 (2017) (internal quotation marks omitted).

Given the substantive similarities between the LAD and its federal counterparts, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to

17

e–17, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 to 12213, our state courts in interpreting the LAD look to federal anti-discrimination cases "as a key source of interpretive authority." Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 97 (1990) (discussing Title VII of the Civil Rights Act); see e.g., Richter, 246 N.J. at 527 (discussing how ADA caselaw informs LAD claims); Tynan, 351 N.J. Super. at 397 ("Department of Law and Public Safety regulations [N.J.A.C. 13:13-2.5] mirror the ADA and also require employers to make reasonable accommodation to the limitations of a disabled employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.") (internal quotation marks omitted).

Failure-to-Accommodate Claims

There are two distinct categories of disability discrimination: (1) disparate treatment; and (2) the failure to reasonably accommodate the employee's known disability. Id. at 397. "Although the LAD does not explicitly address a reasonable accommodation requirement or claim, 'our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's disability." Richter, 246 N.J. at 520 (quoting Potente v. County of Hudson, 187 N.J. 103, 110 (2006)).

A-1164-23

The New Jersey Administrative Code further outlines the role of an employer in ensuring that a disabled person is not disadvantaged in the workplace by placing an affirmative obligation on employers to provide "reasonable accommodations" for disabled employees. N.J.A.C. 13:13-2.5(b).

N.J.A.C. 13:13-2.5(b) prescribes that "[a]n employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." The term "reasonable accommodation" is not defined by the LAD nor within N.J.A.C. 13:13-2.5.[9] However, the administrative code provides

---

[9] "Reasonable accommodation," by comparison, is defined under the ADA, 29 C.F.R. § 1630.2, as:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

A-1164-23

various examples of reasonable accommodations, such as "i. [m]aking facilities used by employees readily accessible and usable by people with disabilities; ii. [j]ob restructuring, part-time or modified work schedules or leaves of absence; iii. [a]cquisition or modification of equipment or devices; and iv. [j]ob reassignment and other similar actions." N.J.A.C. 13:13-2.5(b)(1).

The elements of a failure-to-accommodate claim under the LAD require proof that the claimant:

> (1) qualifies as an individual with a disability, or [ ] is perceived as having a disability, as that has been defined by statute; (2) is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without reasonable accommodations; and (3) that defendant failed to reasonably accommodate [his or her] disabilities.
>
> [Richter, 246 N.J. at 526 (alteration and omission in original).][10]

---

> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

[10] This reflects similar language under the ADA by which a "qualified individual with a disability" is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Expanding on the second element, an employee must possess the bona fide occupational qualifications for the job position in order to trigger an employer's obligation to reasonably accommodate the employee to the extent required by the LAD.  Raspa v. Office of Sheriff of Cnty. of Gloucester, 191 N.J. 323, 327 (2007).

"If an employer reasonably determines that an employee because of handicap cannot presently perform the job even with an accommodation, then the employer need not attempt reasonable accommodation."  Tynan, 351 N.J. Super. at 397.  Notably, "[a]n employer's duty to accommodate extends only so far as necessary to allow a disabled employee to perform the essential functions of his job."  Ibid. (internal quotation marks omitted).

Good Faith Participation in the Interactive Process

The ADA's regulations, which we look to for comparative guidance under the LAD, prescribe that:

> To determine the appropriate reasonable accommodation, it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation.  This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.
>
> [29 C.F.R. § 1630.2(o)(3).]

Our state laws do not explicitly mention the "interactive process," but our caselaw has applied the concept of an interactive process under the ADA, 29 C.F.R. § 1630.2(o)(3), to LAD claims as well.  Tynan, 351 N.J. Super. at 400; Richter, 246 N.J. at 530.  We noted in Tynan that, although the employee has the duty to initiate the interactive process, both the employee and employer "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith."  351 N.J. Super. at 400.  This informal interactive process "must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability."  Ibid.

To show that an employer failed to participate in good faith in the interactive process, a disabled employee must demonstrate four elements:  (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.  Id. at 400–01.  As the trial court correctly observed, the first two of these elements set forth in Tynan are uncontested here.

An employer's good faith "proactive" interactive process can be demonstrated by "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." Taylor v. Phoenixville School Dist., 184 F.3d 296, 317 (3d Cir. 1999).

Undue Hardship and Unreasonable Requests by an Employee

An employer is not required to accommodate all of an employee's requests for accommodation. Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 91 (App. Div. 2001); Tynan, 351 N.J. Super. at 397 ("An employer's duty to accommodate . . . does not require acquiescence to the employee's every demand.") (internal quotation marks omitted).

An employer may rebut[11] an employee's reasonable accommodation and provide alternative accommodation options by demonstrating the employee's proposed accommodation is unreasonable or would impose an undue hardship on the employer. Grande v. Saint Clare's Health Sys., 230 N.J. 1, 21 (2017)

_____

[11] Basic contract law principles instruct that a counter-offer functions as a rejection. See Restatement (Second) of Contracts § 39. cmt. a (Am. L. Inst. 1981).

("An employer may rebut a plaintiff's reasonable-accommodation showing by providing evidence that the proposed accommodation is unreasonable."); N.J.A.C. 13:13-2.5(b) ("An employer must make a reasonable accommodation . . . unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.")

Although the LAD and the administrative code do not define "undue hardship," the ADA comparatively defines "undue hardship" to mean "significant difficulty or expense." 29 C.F.R. § 1630.2(p)(1). N.J.A.C. 13:13-2.5(3) specifies that a defendant's assertion of undue hardship is considered in light of:

> i. The overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget;
>
> ii. The type of the employer's operations, including the composition and structure of the employer's workforce;
>
> iii. The nature and cost of the accommodation needed, taking into consideration the availability of tax credits and deductions and/or outside funding; and
>
> iv. The extent to which accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement.

However, if multiple reasonable accommodation options exist that suit the needs of the employee, the employer, "has the ultimate discretion to choose

24

between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." Victor v. State, 203 N.J. 383, 424 (2010).

Notably here, the NJDOT does not rely on a defense of undue hardship with respect any of Gould's requests for accommodation and in its answer to the complaint did not assert undue hardship as an affirmative defense.[12] As we will discuss in our analysis, that non-reliance is significant to our review of the trial court's decision.

## III.

We now apply these substantive principles of reasonable accommodation, participation in the interactive process , and the affirmative obligation to act in good faith to the trial court's grant of summary judgment. In doing so, we review the summary judgment ruling de novo. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 124–25 (2023).

The trial court was obligated to consider the entire factual record, and reasonable inferences that can be drawn from those facts, "view[ing] the evidence in the light most favorable to the non-moving party and analyz[ing]

---

[12] The NJDOT did invoke in its answer "legitimate non-discriminatory, non-retaliatory business reasons" for the NJDOT's treatment of plaintiff.

whether the moving party was entitled to judgment as a matter of law." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)).

When the evidence "is so one-sided that one party must prevail as a matter of law," summary judgment should be granted. Brill, 142 N.J. at 540. If, however, there are materially disputed facts, the motion for summary judgment should be denied. Pantano v. N.Y. Shipping Ass'n, 254 N.J. 101, 115 (2023). The opposing party must produce evidence that creates a genuine issue of material fact, and "[c]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019).

In the specific context of disability claims for reasonable accommodation, case law recognizes that summary judgment is generally inappropriate where there is a genuine dispute about whether an employer interacted with the employee in good faith. Taylor, 184 F.3d at 318. Additionally, summary judgment should not ordinarily be granted when the claim at issue entails a determination of a state of mind, such as bad faith. Auto Lender v. Gentilini Ford, 181 N.J. 245, 271–72 (2004) (finding that when "intent becomes a disputed issue of fact [it is] generally not appropriate for disposition through

summary judgment").

Applying these principles de novo, we conclude the trial erred in granting summary judgment to the NJDOT and in dismissing Gould's disability discrimination claims. Viewing the record, as we must, in a light most favorable to plaintiff, there are triable issues for a jury to assess, both with respect to Gould's requests for short-term accommodations while the construction work was ongoing at the jobsite, as well as Gould's long-term requests for appropriate bathroom facilities that reasonably addressed his incontinence needs. We discuss those short-term and long-term issues, in turn.

The Short-Term Requests for Accommodation

As we detailed in Part I, Gould proposed two accommodations to address his urinary-incontinence needs during the temporary period of construction activity at the NJDOT when the van drop-off spot was relocated. First, he requested permission to utilize a side door entrance to the building by the credit union office, which was substantially closer to the nearest bathroom. The NJDOT rejected his request, asserting that security considerations precluded granting him such access.

Gould contended that those security concerns were misplaced because he had observed construction workers and other personnel using the side door as

an entrance. The trial court nonetheless accepted the NJDOT's security reasons at face value and concluded the side-door request was unreasonable. The court did not evaluate this issue in a light most favorable to plaintiff. Instead, the court made a definitive finding about what appears to be genuine disputed issue of material fact about whether, in fact, such other persons were already using the side door and whether building security would be unduly compromised by issuing a key or a swipe card to Gould. A jury should decide these questions of fact and evaluate whether the employer unreasonably curtailed an interactive process to explore this option.

Second, as an alternative to side-door access, Gould proposed that he be permitted to work from home for the six-week construction period. As we noted above, the NJDOT rejected that option, asserting that Gould was not in a job category that justified allowing him to work from home.[13] The NJDOT instead proposed to Gould that he take a leave of absence[14] until the construction was finished. However, N.J.A.C. 13:13-4.4 requires a person with a disability be

---

[13] We note these events occurred before the COVID-19 pandemic and the widespread prevalence of remote work.

[14] It is unclear from the record if the leave of absence would have been unpaid or at least have required Gould to draw down on any accumulated leave time he had earned.

accommodated in the most integrated setting appropriate to the needs of that employee, implying that a leave of absence would be a last resort if no other accommodation was feasible.  Indeed, Gould did not want to take a leave and wanted to continue performing his job functions with an accommodation. Further, Gould asserted at the time he had made his accommodation request that "several other employees in his unit were allowed to work from home at that time."  The court adopted the NJDOT's position on this subject as well, treating the employer's counter-offer as dispositive proof of its good faith.

The court erroneously made a definitive finding about what appears to be genuine disputed issue of material fact about whether Gould was categorically and unfairly prevented from utilizing the remote work option that others in his unit enjoyed.  Again, the assessment of this issue should have been reserved for a jury, which could have evaluated this question of fact and the reasonableness of the parties' respective positions.

The NJDOT contends it was willing to accommodate Gould on a temporary basis by installing a port-a-john outdoors near the relocated van drop-off spot.  Gould agrees that a port-a-john would have been a reasonable accommodation of his often-urgent need to relive himself after getting off the van.  He contends, however, that the NJDOT did not clearly communicate to

him that it was willing to install a port-a-john. According to Gould, the potential option was communicated to him only obliquely and equivocally in Bernadini's July 18, 2017 email, which merely stated that the NJDOT was "consider[ing] the possibility" and that Moore-Stein should be following up on the subject. The record is bereft of evidence that Moore-Stein or others actually followed up on this particular accommodation possibility, and Gould claims they did not. A jury should sort out whether there was reasonable interactive discussion of the issue.

The NJDOT also contends it had acted reasonably in offering to give Gould extra time to walk from the relocated van drop-off spot to the nearest suitable bathroom. However, the record indicates that the NJDOT conditioned that proposal on the right to deduct those extra minutes from Gould's accumulated leave time. Gould asserts this proposal was unresponsive to his biological need to have prompt access to a bathroom. The trial court nevertheless incorrectly deemed the employer's proposal to be sufficient proof of good faith.

Apart from these items proposed by the parties, the trial court suggested, apparently sua sponte, that Gould should have considered driving himself to work from his Vineland residence and stopping to use restrooms as needed

during his commute. There is no evidence in the record of the feasibility of that suggestion, nor whether it was reasonable to require Gould to commute by car from that substantial distance. In any event, the suggestion apparently was not made by the employer within the interactive process.

Long-Term Accommodations

The trial court also conclusively determined that the NJDOT had engaged in good faith in an interactive process with respect to Gould's long-term requests for accommodation. That dispositive finding likewise deprived Gould erroneously of a jury's assessment.

Specifically, Gould had requested his employer to provide him with a bathroom in which he could privately wash himself and his soiled clothing after episodes of incontinence. In response, the NJDOT offered to place a chair in an existing bathroom and tighten coat hooks. The NJDOT also offered plaintiff access to the existing bathroom near the cafeteria equipped with a shower, and to allow him to use a locker for his clothing.

Gould contended these proposed measures did not solve his sanitary and privacy needs. He asked instead that a bathroom be modified to install a sink within a stall accessible for people with disabilities, where he could wash himself and his clothing with privacy. The NJDOT did not agree to that request.

The record does not disclose an estimate of the costs of such a modified restroom, nor the feasibility of the plumbing and construction it would entail. We must reiterate, however, that the NJDOT has not asserted a defense of undue hardship.

Under the circumstances present, the court should have allowed a jury to evaluate the give-and-take concerning these suggested long-term accommodations, and the reasonableness of each party's respective positions.

The NJDOT argues that employers have no obligation to comment on every specific accommodation that a disabled employee may propose, and to recite reasons for why it is unwilling to undertake each accommodation. The NJDOT contends that the law does not and should not enable workers to present long lists of proposed accommodations to employers and demand that the employer show why each proposal is not acceptable. We reject this "slippery slope" argument.

We agree that an employer is not obligated to accept an accommodation just because an employee asked for it. Nor does an employer need to articulate reasons for rejecting each of the specific demands, so long as there are some indicia that the employer acknowledged and considered them. That said, the employer's good faith within the interactive process must be assessed

32

contextually, in light of the number and complexity of the employee's proposals. The availability of an undue-hardship defense, which was not asserted here, will guard against overreach by employees who might demand an excessive number of accommodations. Here, Gould requested only about a half-dozen temporary and long-term accommodations, comparable to the employer's "five-point list" that was at issue in Tynan, 351 N.J. Super. at 393.[15]

## IV.

In sum, the trial court improvidently granted the NJDOT summary judgment, given the genuine material issues of fact presented and the jury's important role in evaluating the credibility and good faith of the parties and the reasonableness of their conduct within the interactive process. Here, as in Tynan, the employee's failure-to-accommodate claim "should not have been dismissed on summary judgment and must be determined by a jury." Id. at 404; see also Taylor, 184 F.3d at 318 ("where there is a genuine dispute about whether

---

[15] We are unpersuaded by defendant's reliance on Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412 (App. Div. 2001). Jones did not focus on an employer's failure to address an employee's proposed reasonable accommodations. Instead, the case involved the legal question of whether a reasonable accommodation requires an employee to keep previous job benefits, such as remaining in a unionized job title while assigned to a nonunion position. Id. at 425.

the employer acted in good faith [within the interactive process], summary judgment will typically be precluded.").

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1164-23